COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| | § | |
| ELIJAH RAGIRA/VIP LODGING GROUP, INC., | § | |
| | | No. 08-07-00182-CV |
| Appellant/Cross-Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | 67th District Court |
| VIP LODGING GROUP, INC., ATMEX CORPORATION AND J. SANTOS ESPINOZA/ELIJAH RAGIRA, | § | |
| | | of Tarrant County, Texas |
| | § | |
| | | (TC#067-208925-04) |
| Cross-Appellee/Appellees. | § | |
| | § | |
| | § | |

**O P I N I O N**

This appeal stems from a suit for specific performance of three commercial real estate sales contracts. We affirm in part and reverse in part.

**BACKGROUND**

VIP owned five tracts of land secured by a senior note held by PMC Commercial Trust (PMC) and a subordinate note held by Sunburst Hotel Corporation (Sunburst). Having trouble paying off the matured notes on the property, which totaled approximately $2.7 million, VIP entered into negotiations with Ragira for the purchase of the property. On May 6, 2004, the parties agreed to a purchase price of $3.5 million and executed three separate contracts the following day.

The first contract provided for the purchase of tracts four and five at a price of $1 million and named the closing date as May 31, 2004. The second contract was for the purchase of tract one at a price of $1.5 million with a closing date of November 30, 2004. And the third contract was for the

purchase of tracts two and three at a price of $1 million and a closing date of February 28, 2005. Each contract, drafted by Ragira's attorney, required Ragira to deposit earnest money and pay a $100 review-period fee by May 18, 2004, the fifth business day following the execution of the contracts. If Ragira failed to do either, the contracts were rendered null and void.

On May 25, 2004, the parties amended the first contract to extend the review period to June 2, 2004, and to move the closing date to June 7, 2004. Ragira's obligation to provide the earnest money and review fees was not modified. However, on June 2, 2004, Ragira advised VIP that he did not have financing ready for closing and cancelled the contract. Nevertheless, due to threatened foreclosure by PMC, VIP and Ragira entered into further negotiations, and the first contract was reinstated on June 21, 2004, with a reduced purchase price of $900,000, and a closing date of June 30, 2004. Also on June 21, 2004, the second and third contracts were amended with a reduced purchase price of $1.35 million and $900,000, respectively. Although Ragira deposited the earnest money for each contract, he did not pay any of the review-period fees.

The contracts also required VIP to provide Ragira with a survey or a phase one environmental report if Ragira so desired. Whether Ragira or VIP was to prepare the survey and environmental assessment was contested at trial. VIP claimed that Ragira accepted the existing surveys and was responsible for having the environmental assessments performed by the closing date, with subsequent reimbursement from VIP. Ragira disagreed, indicating that he never agreed to accept an existing survey, since the contracts entitled him to a new survey, nor did he agree that he would accept the responsibility of performing the environmental assessment. However, the record reflects that Ragira requested, at the end of June, that MAS-D perform a phase one environmental assessment for all of the properties, and MAS-D's written report, which VIP paid for, was issued on July 7, 2004. That same day, the parties met with the MAS-D representative, and although the

representative gave VIP a copy of the reports, VIP did not give a copy of the report to the title company.

The parties did not close on the first contract on June 30, 2004. Ragira claimed this was because VIP had not furnished the survey or environmental report, but VIP asserted Ragira lacked financing. However, in the middle of July, Ragira contacted VIP for purposes of proceeding with closing on the first contract. VIP responded that it had no obligation to close since Ragira did not close on June 30, 2004, and that it would not go forward on the subsequent contracts believing those were contingent on closing on the first contract.

VIP later contacted Paramount Investments and listed the properties for sale. On August 19, 2004, the Dallas Cowboys announced plans to move its stadium to Arlington, Texas, and Ragira, upon learning of the Cowboys' intentions, contacted VIP about the properties. In September, Ragira forwarded VIP a new proposal that if agreed, would merge the first and second contracts into the third with a purchase price for all tracts at $3.2 million. The proposal provided that Ragira would pay $1.7 million in cash and that VIP would owner-finance the remaining balance at 3 percent interest. VIP would not consider the proposal because the $2.7 million debt owed to PMC and Sunburst had to be paid to avoid foreclosure. Consequently, on September 23, 2004, Ragira notified VIP that because it failed to provide a new survey and the environmental report prior to closing, VIP was in breach, and Ragira intended to seek specific performance. Ragira filed memoranda of contracts for the first, second, and third contracts with the Tarrant County Deed Records on October 25, 2004.

Meanwhile, Paramount located two purchasers, ATMEX and J. Santos Espinoza, for some of the tracts. On September 24, 2004, VIP contracted to sell tract two, part of tract three, and tract five to ATMEX for a total price of $875,000, and on November 1, 2004, VIP contracted to sell tract

four to Espinoza. VIP did not advise either ATMEX or Espinoza of Ragira's intent to seek specific performance despite Ragira's letter dated September 23, 2004. Moreover, in the sales contracts, VIP represented that there was no pending or threatened ligation relating to the properties. Further, at closing on November 3, 2004, VIP executed affidavits of debts and liens, and special warranty deeds to ATMEX and Espinoza, representing that to the best of its knowledge and belief there were no unrecorded contracts affecting the property.

On November 8, 2004, Ragira notified VIP of the memoranda of contracts and indicated that he was ready to perform under all the contracts and wanted to close on them by November 30, 2004. Later, VIP, ATMEX, and Espinoza entered into contracts to sell their properties to the City of Arlington with a closing date of January 31, 2006. However, the parties were prevented from doing so because of the clouds on the titles.

In December, Ragira filed suit seeking specific performance of the contracts and the imposition of a trust on all tracts, including those conveyed to ATMEX and Espinoza. VIP, ATMEX, and Espinoza filed counterclaims against Ragira to remove clouds on the real estate involved, damages for slander of title, and attorneys' fees. ATMEX and Espinoza also asserted cross-claims against VIP seeking direct and consequential damages stemming from breach of warranty, fraud, negligent misrepresentation, and for breach of contract. VIP, ATMEX, and Espinoza each moved for and were granted instructed verdicts as to all claims asserted by Ragira. VIP's directed verdict was granted on grounds that there was no evidence that Ragira was ready, willing, and able to close on the contracts, nor was there evidence of any lost profits suffered by Ragira. ATMEX's and Espinoza's directed verdict was granted on grounds that specific performance was not an available remedy for Ragira as he had other, adequate remedies at law against VIP, and that Ragira produced no evidence to demonstrate that he was ready, willing, and

able to close on the second and third contracts.

The remaining claims were submitted to the jury. The jury determined that Ragira did not slander the title and answered zero dollars on damages. Concerning the claims alleged against VIP by AMTEX and Espinoza, the jury found that VIP breached warranties, committed statutory fraud, and made negligent misrepresentations resulting in damages of $19,500 to ATMEX and $23,800 to Espinoza. In addition, ATMEX and Espinoza were awarded $57,197.50 in attorneys' fees against VIP. VIP was also awarded $131,196 in attorneys' fees charged against Ragira, the fees necessary to defend the main suit at trial. In the trial court's modified judgment, it found that all of the underlying contracts involving Ragira were null and void, and the court quieted the title of all properties in dispute.

Both Ragira and VIP appeal the adverse judgments against them. We address each in turn.

## DISCUSSION

Ragira, in ten issues, alleges that the trial court erred by granting the directed verdicts and awarding attorneys' fees to VIP. VIP, in addition to refuting Ragira's allegations, alleges the trial court erred in rendering judgment against it on claims of slander of title, breach of warranty, statutory fraud, and negligent misrepresentation, and in awarding damages and attorneys' fees to ATMEX and Espinoza. We address Ragira's claims first.

### Ragira's Claims

Ragira's first, fourth, and seventh issues concern the directed verdict on the first contract, his second, fifth, and eighth issues concern the directed verdict on the second contract, and his third, sixth, and ninth issues concern the directed verdict on the third contract. In essence, Ragira argues that because he was ready, willing, and able to close on the three contracts, he demonstrated his entitlement to the remedy of specific performance. He further asserts that he presented legally

sufficient evidence to support his claim for actual damages under the contracts. Ragira's tenth issue alleges the trial court's award of attorneys' fees to VIP was improper.

### The Directed Verdict Claims

A court may grant an instructed verdict if no evidence of probative force raises a fact issue on the material questions in the suit. *See Szczepanik v. First S. Trust Co.*, 883 S.W.2d 648, 649 (Tex. 1994). Therefore, a directed verdict for a defendant is proper if the plaintiff failed to present evidence raising a fact issue essential to the plaintiff's right of recovery or if the plaintiff admits, or the evidence conclusively establishes, a defense to the plaintiff's cause of action. *See Latham v. Castillo*, 972 S.W.2d 66, 67-68, 70-71 (Tex. 1998); *Villegas v. Griffin Indus.*, 975 S.W.2d 745, 748-49 (Tex. App.–Corpus Christi 1998, pet. denied); *Davis v. Mathis*, 846 S.W.2d 84, 86 (Tex. App.–Dallas 1992, no writ).

In reviewing a directed verdict, we must credit favorable evidence if reasonable jurors could and disregard contrary evidence unless reasonable jurors could not. *See City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). If the question to be decided is whether the losing party at trial raised a material fact issue, we consider all the evidence in a light most favorable to the party against whom the verdict was instructed and disregard all contrary evidence and inferences. *Coastal Transport Co. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 234 (Tex. 2004). In other words, we give the losing party the benefit of all reasonable inferences created by the evidence. *Id*. If we determine that any conflicting evidence of probative value raises a material fact issue on any theory of recovery, then the directed verdict is improper because such an issue is for the jury to resolve. *Szczepanik*, 883 S.W.2d at 649.

### Specific Performance

The equitable remedy of specific performance may be awarded upon a showing of breach of

contract. *Stafford v. S. Vanity Magazine, Inc.*, 231 S.W.3d 530, 535 (Tex. App.–Dallas 2007, pet. denied). However, to be entitled to specific enforcement of a contract, a party must show that the contract in question is valid and enforceable. *See Nguyen v. Woodley*, 273 S.W.3d 891, 898 (Tex. App.–Houston [14th Dist.] 2008, no pet.); *Abraham Inv. Co. v. Payne Ranch, Inc.*, 968 S.W.2d 518, 527 (Tex. App.–Amarillo 1998, pet. denied). Because we find that Ragira's failure to pay the review-period fees rendered the contracts null and void, no contracts existed, and therefore, Ragira was not entitled to specific performance.

Initially, we recognize that the trial court denied VIP's motion for a directed verdict on this ground. However, whether a particular agreement is an enforceable contract is a question of law reviewed *de novo*. *Perry Homes v. Cull*, 258 S.W.3d 580, 598 (Tex. 2008); *Vermont Info. Processing, Inc. v. Montana Beverage Corp.*, 227 S.W.3d 846, 852 (Tex. App.–El Paso 2007, no pet.); *Meru v. Huerta*, 136 S.W.3d 383, 390 (Tex. App.–Corpus Christi 2004, no pet.). In this case, the express terms of the contracts provided that Ragira's failure to pay the review-period fees rendered the contracts "null and void." Further, Ragira admitted that he failed to pay those fees for any of the contracts. Accordingly, the three contracts were null and void, and Ragira was not entitled to specific performance.

Ragira, citing *1464-Eight, Ltd. v. Joppich*, 154 S.W.3d 101, 110 (Tex. 2004), argues that the nonpayment of the review-period fees did not preclude the enforcement of the contracts. *See id.* (holding that the false recital of nominal consideration does not preclude the enforcement of an option agreement). However, unlike *Joppich,* the parties did not include a false recital of nominal consideration, that is, that the review-period fees had been paid. Rather, the contract required the payment of the review-period fees and expressly provided that Ragira's failure to do so rendered the contracts null and void. *See Henshaw v. Texas Natural Resources Foundation*, 147 Tex. 436, 216

S.W.2d 566, 571 (1949) (if the consideration in a contract is expressed in terms which unmistakably demand a forfeiture for nonperformance, a breach of such terms will authorize cancellation of the contract). Because Ragira failed to satisfy the express requirements of the contract by failing to pay the review-period fees, the contracts were unenforceable as a matter of law, and therefore, Ragira was not entitled to specific performance on any of the contracts.

*Ready, Willing, and Able*

Assuming the contracts were enforceable, Ragira was still required to show his readiness, willingness, and ability to perform at relevant times to be entitled to specific performance. *DiGiuseppe v. Lawler*, 269 S.W.3d 588, 593-94, 601 (Tex. 2008); *see also 17090 Parkway, Ltd. v. McDavid*, 80 S.W.3d 252, 258 (Tex. App.–Dallas 2002, pet. denied) (a party seeking specific performance must plead and prove (1) compliance with the contract including tender of performance unless excused by the defendant's breach or repudiation, and (2) the readiness, willingness, and ability to perform at relevant times). We find he did not.

Ragira contends that he proved his ability to tender performance on all the contracts by relying on the evidence showing that he contacted a third-party investor, Ivan Ishii, who had been pre-approved for a loan of $2.25 million, to aid in the purchase of the property. When a party alleges he is ready, willing, and able to perform under the terms of a contract, but is relying on third-party financing, the party must show that he had a firm commitment for financing, or he will not be entitled to specific performance. *Luccia v. Ross*, 274 S.W.3d 140, 147 (Tex. App.–Houston [1st Dist.] 2008, pet. denied); *Hendershot v. Amarillo Nat'l Bank*, 476 S.W.2d 919, 920 (Tex. Civ. App.–Amarillo 1972, no writ).

The record shows that in May 2004, Ragira and Ishii engaged in discussions about purchasing the VIP properties. On May 31, 2004, Ishii sent a letter agreement to Ragira, which Ragira signed

on June 3, 2004, the day after Ragira gave written notice of the termination of the first contract, that provided that Ishii and Ragira would form a LLC to purchase the properties, that Ishii would invest $700,000 with a 40 percent ownership in the company, and that Ragira would invest $300,000 with a 60 percent ownership in the company. The letter also provided that Ragira was to secure a survey, an environmental study, title insurance, and warranties on the properties, and that obtaining these documents, in addition to the formation of the LLC, were conditions precedent to Ishii's willingness to invest $700,000.

We find that the letter agreement falls short of the required firm commitment for financing. The letter agreement did not exist as of the original closing date of the first contract, and by the time Ishii's proposal was accepted by Ragira, Ragira already terminated the first contract, a fact of which Ishii was not aware. Moreover, funding for the purchase of all the properties was conditional on the formation of a LLC, which was never formed, and title insurance was to be obtained, which was never proven to have occurred. Additionally, although Ragira claims that VIP was responsible for obtaining the environmental reports under the terms of the contracts, the letter agreement placed that burden on Ragira, and Ragira did not obtain the environmental report until after the closing date passed on the first contract. Ishii admitted that he was never legally obligated to provide any money to Ragira unless the precedent conditions in his letter were met. Further, there was no evidence presented that Ishii and Ragira changed any of the terms of the letter agreement when subsequent amendments to the contract reduced the purchase price for the properties, much less that Ishii was aware of the change in the financing arrangements. Finally, Ragira's final proposal to VIP in September, which provided that VIP would owner-finance $1.5 million at 3 percent interest suggests that Ragira was no longer operating with Ishii on the purchase of the properties. Based on this evidence, we find there was no evidence of a binding agreement between Ishii and Ragira, and thus,

no firm commitment for financing on any of the contracts. *See Hendershot*, 476 S.W.2d at 920-21 (evidence that purchaser had seen his bank and could make arrangements for the purchase was not sufficient to entitle buyer to specific performance under the contract). Accordingly, there was no evidence, apart from Ragira's self-serving testimony, that he was ready, willing, and able to close on the contracts.

Having determined that Ragira did not have a firm commitment for financing from a third-party investor, we agree with the trial court that Ragira was not ready, willing, and able to perform under the contracts, and therefore, Ragira was not entitled to specific performance on any of his contracts. We overrule Ragira's first through sixth issues.

*Actual Damages*

Ragira further asserts that the trial court erred by denying his claims for actual damages against VIP. However, Ragira solely based his claim for actual damages on lost profits that were not in the contemplation of the parties at the time the contracts were executed. Indeed, Ragira asserted that he was entitled to approximately $4 million in lost profits since the record reflected that the amended contracts, executed in June 2004, provided for a purchase price of $3.15 million, and that after the Dallas Cowboys, in August 2004, announced their intention to move their stadium to Arlington, Arlington agreed to buy the tracts of land for $7.8 million. However, the Cowboys' announcement was made after the execution of the contracts between Ragira and VIP. Ragira is not entitled to lost profits that were not in the contemplation of the parties at the time the contracts were entered into. *See* Restatement (Second) of Contracts § 351(1) (1981) ("Damages are not recoverable for loss that the party in breach did not have reason to foresee as a probable result of the breach when the contract was made."); *Stuart v. Bayless*, 964 S.W.2d 920, 921 (Tex. 1998) (in a breach of contract case, consequential damages are not recoverable "unless the parties contemplated at the time

they made the contract that such damages would be a probable result of the breach"); *Basic Capital Mgmt. v. Dynex Commercial, Inc.*, 254 S.W.3d 508, 520-21 (Tex. App.–Dallas 2008, pet. granted) ("in the event of a breach of contract to lend money, the borrower can recover consequential damages, i.e., expenses and lost profits, if the breaching lender knew, at the time it entered into the contract: (1) that the contracted financing was for a specific venture; and (2) that in the event of its breach the borrower probably would be unable to obtain other financing in a manner that would permit the borrower to carry out that venture"); *Hadley v. Baxendale*, 9 Exch. 341, 354-55 (1854) ("if the special circumstances under which the contract was actually made were communicated by the plaintiffs to the defendants, and thus known to both parties, the damages resulting from the breach of such a contract, which they would reasonably contemplate, would be the amount of injury which would ordinarily follow from a breach of contract under these special circumstances so known and communicated"); *see also Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 816 (Tex. 1997) (explaining that actual damages are either direct or consequential and that both require foreseeability). Accordingly, the trial court did not err in denying Ragira's claim for actual damages, and we overrule Ragira's seventh, eighth, and ninth issues.

*VIP's Attorneys' Fees*

Ragira's tenth issue asserts that the trial court erred in awarding attorney fees to VIP when the pleadings did not support the recovery of attorney fees. We agree.

The Texas Uniform Declaratory Judgments Act allows the trial court to award reasonable and necessary attorneys' fees and costs that are equitable and just. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (Vernon 2008). The decision to grant or deny attorneys' fees and costs is within the trial court's sound discretion. *Oake v. Collin County*, 692 S.W.2d 454, 455 (Tex. 1985). We do not reverse the trial court's award of attorneys' fees unless the complaining party shows a clear abuse

of discretion. *Id*. A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles. *Walker v. Gutierrez*, 111 S.W.3d 56, 62 (Tex. 2003) (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985)).

VIP pleaded slander of title and requested a declaration of rights to the properties at issue. Slander of title, however, does not support the award of attorneys' fees. *Scherer v. Angell*, 253 S.W.3d 777, 783 (Tex. App.–Amarillo 2007, no pet.); *Williams v. Jennings*, 755 S.W.2d 874, 886 (Tex. App.–Houston [14th Dist.] 1988, writ denied). Similarly, attorneys' fees are not recoverable in a suit to quiet title. *See Southwest Guar. Trust Co. v. Hardy Rd. 13.4 Joint Venture*, 981 S.W.2d 951, 952-53 (Tex. App.–Houston [1st Dist.] 1998, pet. denied); *Sadler v. Duvall*, 815 S.W.2d 285, 293-94 (Tex. App.–Texarkana 1991, writ denied). Therefore, the trial court's award of attorneys' fees is not supported on these grounds.

Nevertheless, VIP argues that the award of attorneys' fees was proper. First, it asserts that the contracts provided for the recovery of attorneys' fees by stating that the prevailing party in a lawsuit related to the contract would be entitled to recover from the other party the reasonable attorneys' fees. However, the contracts, as noted above, were rendered null and void when Ragira failed to pay the review-period fees; therefore, because the contracts were no longer in force, the contracts' terms cannot support the award of damages.

Second, VIP contends that attorneys' fees were proper since it conclusively established that Ragira breached the contracts by failing to close the transactions in a timely manner. This argument fails for the same reason as the first. Because the contracts were null and void, Ragira could not close on the properties.

Third, VIP argues that it is entitled to attorney fees, because it was successful on its declaratory-judgment action. Although a party, in a declaratory-judgment action, is entitled to those

fees that a trial court determines are "just and equitable" under the circumstances, VIP's counterclaims were to quiet title and not a declaratory-judgment action. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (in declaratory-judgment actions, attorneys' fees are recoverable); *Southwest Guaranty*, 981 S.W.2d at 957 (attorneys' fees are not recoverable in a suit to quiet title). It is clear that VIP's pleadings, which asked for a declaratory judgment against Ragira and attorneys' fees, was actually seeking the parties rights, if any, to the real properties subject to the suit, removal of the clouds of title filed by Ragira, and to quiet the title of the tracts in dispute. In short, VIP's claim was one to quiet title. Because the declaratory action cannot supplant the action to quiet title, VIP was unable to recover attorneys' fees. *See Southwest Guaranty*, 981 S.W.2d at 957; *McRae Exploration & Prod., Inc. v. Reserve Petroleum Co.*, 962 S.W.2d 676, 684 (Tex. App.–Waco 1998, no pet.); *Barfield v. Holland*, 844 S.W.2d 759, 771 (Tex. App.–Tyler 1992, writ denied) (cases construing declaratory-judgment actions as ones to quiet title).

Because the trial court abused its discretion in awarding attorneys' fees to VIP, we sustain Ragira's tenth issue, reverse the award of attorneys' fees, and render judgment that VIP take nothing. We now turn to VIP's claims.

### VIP's Claims

In sixteen issues, VIP asserts that the evidence is insufficient to support the jury's findings that Ragira did not slander title, that it was not entitled to damages, that it breached its warranties to ATMEX and Espinoza, that it committed statutory fraud and negligent representation, and that ATMEX and Espinoza were entitled to damages and attorneys' fees.

When attacking the legal sufficiency of an adverse jury finding to an issue on which the party had the burden of proof, that party must demonstrate that all vital facts were conclusively established in support of the issue as a matter of law. *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex.

1989); *Holley v. Watts*, 629 S.W.2d 694, 696 (Tex. 1982); *Hill v. Heritage Resources, Inc.*, 964 S.W.2d 89, 124 (Tex. App.–El Paso 1997, pet. denied); *Montes v. Texas Employers' Ins. Ass'n*, 779 S.W.2d 485, 487 (Tex. App.–El Paso 1989, writ denied). We employ a two-prong test when reviewing a "matter of law" challenge on an adverse jury finding. *Hill*, 964 S.W.2d at 124; *Chandler v. Chandler*, 842 S.W.2d 829, 832 (Tex. App.–El Paso 1992, writ denied). First, we examine the record for evidence which supports the finding while ignoring all evidence to the contrary. *Sterner*, 767 S.W.2d at 690; *Holley*, 629 S.W.2d at 696; *Hill*, 964 S.W.2d at 124. If there is no evidence to support the finding, we then examine the whole record to determine if the contrary position is established as a matter of law. *Sterner*, 767 S.W.2d at 690; *Holley*, 629 S.W.2d at 696-97; *Hill*, 964 S.W.2d at 124. Only if the contrary position is conclusively established will the point of error be sustained. *Hill*, 964 S.W.2d at 124; *Chandler,* 842 S.W.2d at 832.

When attacking the factual sufficiency of the failure of the fact finder to find an issue on which the party had the burden of proof, the party must demonstrate on appeal that the failure to find is so clearly against the great weight and preponderance of the evidence as to be manifestly unjust. *Hill*, 964 S.W.2d at 124. Under this standard, we first consider whether there is some evidence that supports the failure to find the issue, and then determine, in light of the entire record, whether the failure to find the issue is manifestly unjust. *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983); *Hill*, 964 S.W.2d at 124.

*Slander of Title*

VIP had the burden to prove that Ragira slandered its title. *A. H. Belo Corp. v. Sanders*, 632 S.W.2d 145, 146 (Tex. 1982); *Louis v. Blalock*, 543 S.W.2d 715, 718-19 (Tex. Civ. App.–Amarillo 1976, writ ref'd n.r.e.). "Slander of title" is defined as a false and malicious statement made in disparagement of a person's title to property which causes special damages. *Marrs and Smith*

*Partnership v. D.K. Boyd Oil and Gas Co., Inc.*, 223 S.W.3d 1, 20 (Tex. App.–El Paso 2005, pet. denied); *Sadler v. Duvall*, 815 S.W.2d 285, 293 (Tex. App.–Texarkana 1991, writ denied). The requisite elements include the uttering and publishing of disparaging words that were false and malicious, that special damages were sustained, and that the injured party possessed an interest in the property disparaged. *Marrs*, 223 S.W.3d at 20; *Hill*, 964 S.W.2d at 109-10. Further, the complaining party must demonstrate the loss of a specific sale. *Marrs*, 223 S.W.3d at 20; *Hill*, 964 S.W.2d at 115-16.

Here, the record reflects that on October 25, 2004, prior to the sale of property to ATMEX and Espinoza, Ragira filed in the Tarrant County Deed Records memoranda for all three contracts. Ragira did so because he thought the three contracts were valid and to prevent the conveyance of the property to other buyers. Ragira testified that he thought the review-period fees would be taken from the earnest money if the contracts were terminated by him. Based on this testimony alone, the jury could have determined that Ragira had reasonable cause to file the memoranda of contracts. Because some evidence existed to establish reasonable cause, VIP did not conclusively establish that Ragira slandered its title. The evidence is legally sufficient to support the jury's finding.

However, the jury's determination is against the great weight and preponderance of the evidence, and thus, the evidence is factually insufficient. The express terms of the contract required Ragira to pay the review-period fees and the earnest money five days from the execution of the contracts. Because Ragira did not do so, he had no legal rights in the properties at issue. In other words, Ragira failed to present evidence that he held a valid and enforceable agreement with VIP; thus, the filing of the records would be both false and disparaging as to the rights of VIP in the land.

Moreover, after considering all the evidence in the record, there would be no reasonable cause that Ragira could assert to file the memoranda of contracts. He admitted that he did not pay

the review-period fees, and he stated that he intended to prevent the sale of the property to third parties. Also important is the fact that his excuse for not paying the review, that is, that the review-period fee would simply be deducted from the earnest-money deposits, is not supported by the clear concise language of the contracts for sale. Because of the cloud on the title, VIP was prevented from closing on the contract with the City of Arlington. This led to VIP having to pay forbearance fees, attorneys' fees, and default interest. Therefore, based on a review of the entire record, we find that the jury's findings and the trial court's final judgment is against the great weight of the evidence and so contrary that failure to find that Ragira slandered VIP's title is manifestly unjust.

Accordingly, we reverse the trial court's judgment on VIP's claims for slander of title and damages, and remand for a new trial. *See Ames v. Ames*, 776 S.W.2d 154, 158 (Tex. 1989); *Glover v. Tex. Gen. Indem. Co.*, 619 S.W.2d 400, 401-02 (Tex. 1981) (stating that if appellate court sustains challenge to factual sufficiency, it must reverse judgment and remand for new trial). Having reversed on the slander-of-title claims, we need not review the issues related to damages as the jury's failure to find liability precluded them from finding damages. Therefore, VIP's first four issues are sustained.

*Breach of Warranty, Statutory Fraud, and Negligent Misrepresentation*

VIP's fifth through twelfth issues challenge the findings against it on the breach-of-warranty claims, the statutory-fraud claims, and the negligent-misrepresentations claims. In issues thirteen and fourteen, VIP challenges the award of damages in connection with the aforementioned claims, and in issues fifteen and sixteen, VIP challenges the award of attorneys' fees to ATMEX and Espinoza. Finding the issues on damages dispositive, we need not address VIP's other claims.

The jury generally has broad discretion to award damages within the range of evidence presented at trial. *Gulf States Utils. Co. v. Low*, 79 S.W.3d 561, 566 (Tex. 2002); *Clary Corp. v.*

*Smith*, 949 S.W.2d 452, 467 (Tex. App.–Fort Worth 1997, pet. denied). A jury may not, however, arbitrarily assess an amount neither authorized nor supported by the evidence presented at trial. *Mills v. Jackson*, 711 S.W.2d 427, 434 (Tex. App.–Fort Worth 1986, no writ). In other words, a jury may not "pull figures out of a hat." *Neiman-Marcus Group, Inc. v. Dworkin*, 919 F.2d 368, 372-73 (5th Cir. 1990).

ATMEX and Espinoza, although having received contracts to sell the properties to the City of Arlington for $2.15 million and $2.4 million respectively, were prevented from closing on January 31, 2006, because of the clouds on the titles. ATMEX claimed that had they closed on January 31, 2006, it would have invested its $1.275 million profit in a CD while looking for another investment. Espinoza testified that he would have placed his $1.55 million profit in the bank and purchased another property. At the time of trial, Espinoza was renting the property as apartments and collecting rental income. VIP argued that there was no evidence of loss of value, interest rates, or loss of investment income resulting from the delay in closing with Arlington. ATMEX and Espinoza argued that the jury could reasonably determine damages resulting from their inability to close with Arlington by calculating the months they were unable to close, using an annual CD's interest rate of 5 percent, from January 31, 2006, to May 25, 2006, the day the case was submitted to the jury. The jury was asked to consider the delay in the closing of their contracts with Arlington in assessing damages, and the jury determined that ATMEX and Espinoza suffered damages resulting from the breach-of-warranty, statutory-fraud, and negligent-misrepresentations claims in the amounts of $19,500 and $23,800, respectively.

Viewing the evidence in the light most favorable to the damages award, more than a scintilla of evidence supports the award. *City of Keller*, 168 S.W.3d at 827; *Croucher*, 660 S.W.2d at 58. Evidence was presented that the delay in closing with Arlington prevented Espinoza and ATMEX

from investing their profits. Therefore, the evidence was legally sufficient to support the jury's award of damages.

However, the evidence is not factually sufficient to support the jury's award. The recommendation by ATMEX and Espinoza to use a conservative interest rate of 5 percent is not supported by any testimony at trial, and after reviewing the record, we are unable to find any evidence, other than speculative testimony that the profits would have been reinvested, on how much money was lost as a result of the delay in closing with the City of Arlington. The jury's award of damages must be supported by evidence. *Texarkana Memorial Hosp., Inc. v. Murdock*, 946 S.W.2d 836, 841 (Tex. 1997) ("[I]t is axiomatic that a jury must have an evidentiary foundation on which to base its findings."). While it might be true that some economic harm occurred as a result of the delay in closing, the jury did not have an evidentiary foundation to support its award of damages. We find, therefore, that the award of damages was wrong and manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

We may not order a separate trial solely on the issue of damages when, as here, the parties contested liability at trial and we cannot determine whether the damages were awarded on the breach-of-warranty claims, the statutory-fraud claims, or the negligent-misrepresentations claims. TEX. R. APP. P. 44.1(b); *Willis v. Donnelly*, 199 S.W.3d 262, 276 & n.27 (Tex. 2006); *Estrada v. Dillon*, 44 S.W.3d 558, 562 (Tex. 2001); *University of Houston v. Barth*, 265 S.W.3d 607, 614 (Tex. App.–Houston [1st Dist.] 2008, pet. filed); *El-Khoury v. Kheir*, 241 S.W.3d 82, 90 (Tex. App.–Houston [1st Dist.] 2007, pet. denied). Lack of sufficient evidence to support the jury's award of damages thus necessarily vitiates not only the jury's responses to the actual-damages questions, but the entire verdict on ATMEX's and Espinoza's claims of breach of warranty, statutory fraud, and negligent misrepresentation. Further, the jury's findings on attorneys' fees should likewise be

vitiated as their determination on the aforementioned claims necessarily determines whether attorneys' fees could be awarded. *See Rodgers v. RAB Invs., Ltd.*, 816 S.W.2d 543, 551 (Tex. App.–Dallas 1991, no writ) (providing that to obtain an award of attorneys' fees, a party must prevail on a cause of action for which attorneys' fees are recoverable). Accordingly, we reverse the judgment of the trial court in its entirety, with respect to ATMEX's and Espinoza's claims for breach of warranty, statutory fraud, and negligent misrepresentation, without addressing the contentions raised by VIP's fifth through twelfth, fifteenth, and sixteenth issues, namely, the sufficiency of the evidence and recovery of attorneys' fees to support those judgments.

## CONCLUSION

In conclusion, we affirm the trial court's judgments against Ragira, save the award of attorneys' fees, and on that contention, we reverse and render judgment that VIP take nothing. We further reverse and remand for a new determination on VIP's slander-of-title claim, and we reverse and remand for a new trial on ATMEX's and Espinoza's claims for breach of warranty, statutory fraud, and negligent misrepresentation.


GUADALUPE RIVERA, Justice

November 12, 2009

Before McClure, J., Rivera, J., and Hill, C.J. (Ret.)
Hill, C.J. (Ret.), sitting by assignment