**Opinion issued October 22, 2024**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-22-00750-CV

_____

**HEIGHTS PROPERTY MANAGEMENT, LLC, Appellant**

**V.**

**JOYCE MARIE SCALES, Appellee**

---

**On Appeal from the 80th District Court**
**Harris County, Texas**
**Trial Court Case No. 2021-21454**

---

## MEMORANDUM OPINION

Appellant Heights Property Management, LLC (HPM) sued appellee Joyce Marie Scales seeking specific performance of a residential real estate contract. Following a bench trial, the trial court signed a judgment denying HPM's claim for specific performance and ordered that HPM take nothing from Scales. On appeal,

HPM challenges the legal and factual sufficiency of the evidence to support the trial court's judgment.

We affirm.

## Background

HPM is a real estate investment company that purchases homes, renovates them, and then resells them. HPM focuses on purchasing homes valued under $250,000. Scot F. Carter owns HPM and manages the company.

In March 2021, Scales owned a home on Camway Street in Houston where she lived with her daughter and two grandchildren. Scales had retired about 20 years earlier, at the age of 55, after suffering four brain aneurysms, which affected her memory and cognitive abilities. Scales had paid off the original mortgage on the home but had used the home as collateral for another loan. She owed approximately $75,000 on that loan to Gregory Funding. Scales was behind on the loan payments, and Gregory Funding had sent her a foreclosure notice in July 2020.

Carter knocked on Scales's door and inquired about purchasing her home on behalf of HPM. Carter offered to pay the $75,000 owed to Gregory Funding, plus an additional $25,000 to Scales as "net profit." Scales told Carter that she wanted to consult with her sister, Bettie Snyder, about the offer. Snyder lived in California, and Scales called her on the phone to discuss the offer. After consulting with Snyder,

2

Scales countered, asking for a net profit of $50,000 in addition to the $75,000 mortgage payoff.

On March 27, 2021, the parties signed a form "Purchase and Sale Agreement" (the Contract) for Scales's home. HPM was named as the buyer, and Scales was named as the seller. Carter signed the Agreement as HPM's manager. The Contract reflects that a sale price of $102,000 had been written and crossed out. Below that was written a sales price as "one hundred thirty thousand dollars."[1] There was a handwritten notation that Scales would receive $50,000 at closing. The Contract required that closing occur by May 30, 2021.

Carter scheduled closing on the Contract for April 9, 2021. At trial, Carter testified that he contacted Scales about the closing, but she told him that she no longer wanted to sell her home. Carter appeared at the April 9 closing, but Scales did not attend, and the transaction did not close. Carter had wired $1,000 in earnest money to the closing company, Alamo Title, but no other funds toward the purchase price were tendered. That same day, an attorney for Scales sent Carter a document entitled "Termination of Contract of Sale," asking HPM to agree that "the Contract of Sale is hereby cancelled, terminated and is null and void and of no force and effect." HPM did not agree to cancel the contract.

---

[1] Next to "one hundred thirty thousand dollars" was a price written numerically as $138,000. Because of the discrepancy, the parties dispute whether they agreed on a price, but, as discussed below, we need not decide that issue to resolve the appeal.

On April 12, 2021, HPM filed suit against Scales for breach of contract, seeking specific performance to enforce the Contract. HPM alleged that it had a valid contract with Scales to purchase her home, and it asserted that it had no adequate remedy at law "because the Contract is for the sale of real property, which is unique." HPM claimed that it "ha[d] been, and still is, ready, willing, and able to honor its obligations under the Contract."

Scales answered the suit. She generally denied HPM's allegations and asserted the affirmative defenses of undue influence and duress.[2]

On August 10, 2022, the case was tried to the bench. Among the disputed issues at trial was whether HPM had secured financing to purchase Scales's home. Carter testified for HPM. On direct examination, HPM's attorney asked Carter whether HPM had "funding in place" for the purchase of Scales's home when he signed the Contract. Carter responded in the affirmative and identified the "source of the funding" as "a referral that [he] received from the escrow officer." Carter identified the escrow officer as Khanh Vo with Alamo Title.

HPM's attorney also asked Carter if he still had funding at the time of trial:

[HPM's attorney:] Can you pay, as you sit here today, the 130,000-dollar price?

---

[2] Scales also filed a counterclaim against HPM, asserting violations of the Deceptive Trade Practices Act (DTPA). The trial court dismissed Scales's counterclaim, concluding that she lacked standing as a "consumer" under the DTPA with respect to the sale of her home.

4

[Carter:] Yes.

[HPM's attorney:] And who's your funding with?

[Carter:] Relative Lending.

Scales's attorney then cross-examined Carter about the funding:

[Scales's attorney:] You also mentioned before that you had funding for—when you initially contracted with Ms. Scales, you had funding through Khanh Vo. Is that correct?

[Carter:] It was through a referral from Khanh Vo.

[Scales's attorney:] Do you know the name of the person she referred you to for funding?

. . . .

[Carter:] Joannie Dong, I believe.

HPM also called escrow officer Khanh Vo to testify. When asked whether she knew "who was providing the funding," Vo responded that it "was a referral. It's— I guess it would've been someone I know, like a—like a vendor. I guess you could say it's like a vendor that I knew." When asked if she "recall[ed] the name of the person," Vo stated that she "believe[d] it [was] Joannie Dang," a slightly different name than stated by Carter. Scales's attorney asked Vo whether she had "any documentation proving that Mr. Carter had funding to purchase Ms. Scales's property." Vo answered that she had "a verbal confirmation, nothing in writing."

Scales offered HPM's discovery responses into evidence. Interrogatory No. 9 asked HPM to "identify all sources of funding for the purchase of the property made

the basis of this suit including reference to any financing agreements with any third parties, whether individual or corporate." HPM answered, "Funding for the purchase of the Property was . . . through Khanh Vo." A request for production asked HPM to "produce all documents relating in any way to your response to Interrogatory No. 9," including "contracts, financing agreements, financial statements, letters of intent, letters of credit, or other documents evidencing the sources of funding for the purchase of the property made the basis of this suit." HPM responded, "None."

The trial court rendered judgment in favor Scales. The court denied HPM's claim for specific performance and ordered that HPM take nothing on its claims.

In support of its judgment, the trial court signed findings of fact and conclusions of law. Among its findings, the trial court found that HPM "was not ready, willing, and able to perform at relevant times." Based on that finding, the trial court concluded that HPM "[was] not entitled to specific performance."

HPM now appeals.

**Sufficiency of the Evidence**

In six appellate issues, HPM complains that the evidence was legally and factually insufficient to support the trial court's judgment denying its claim for specific performance. Because it is dispositive, we address only HPM's complaint that the evidence was insufficient to support the trial court's finding that HPM "was not ready, willing, and able to perform at relevant times," which in turn supported

6

the trial court's conclusion that HPM was not entitled to specific performance.[3] *See*

TEX. R. APP. P. 47.1 ("The court of appeals must hand down a written opinion that

is as brief as practicable but that addresses every issue raised and necessary to final

disposition of the appeal.").

## A.     Standard of Review

When a party challenges the legal sufficiency of an adverse finding on an issue

on which that party had the burden of proof, the party must demonstrate on appeal

that the evidence establishes, as a matter of law, all vital facts in support of the issue.

*Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001); *Aspenwood Apts.*

*Partners, LP v. Harris Cnty. Appraisal Dist.*, No. 01-20-00335-CV, 2022 WL

1249956, at *8 (Tex. App.—Houston [1st Dist.] Apr. 28, 2022, no pet.) (mem. op.).

A matter is conclusively established if reasonable people could not differ as to the

conclusions to be drawn from the evidence. *See City of Keller v. Wilson*, 168 S.W.3d

802, 816 (Tex. 2005).

When a party challenges the factual sufficiency of an adverse finding on an

issue on which that party had the burden of proof, the party "must demonstrate on

appeal that the adverse finding is against the great weight and preponderance of the

---

[3]     We note that the six issues contained in the "Issues Presented" section of HPM's
brief do not match exactly the order of the headings and arguments presented in the
body of its brief. We consider HPM's issues and arguments in the body of its brief,
as necessary, to resolve the appeal.

evidence." *Aspenwood Apts. Partners, LP*, 2022 WL 1249956, at *9 (citing *Nguyen v. Yovan*, 317 S.W.3d 261, 270 (Tex. App.—Houston [1st Dist.] 2009, pet. denied), and *Francis*, 46 S.W.3d at 242). In reviewing a factual sufficiency challenge, we must "consider and weigh all of the evidence," and we may "set aside a verdict only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust." *Id.*; *see Crosstex N. Tex. Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580, 615 (Tex. 2016).

In a bench trial, the trial court is the sole judge of the witnesses' credibility and the weight to be given their testimony. *See Zenner v. Lone Star Striping & Paving L.L.C.*, 371 S.W.3d 311, 314 (Tex. App.—Houston [1st Dist.] 2012, pet. denied). In resolving factual disputes, the trial court may choose to believe one witness and disbelieve others, and it may resolve any inconsistencies in a witness's testimony. *Id.*

An appellant may not challenge a trial court's conclusions of law for factual sufficiency, but we may review the legal conclusions drawn from the facts to determine their correctness. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). We review the trial court's conclusions of law de novo and uphold them if they can be sustained on any legal theory supported by the evidence. *See Zenner*, 371 S.W.3d at 314–15.

## B.     Specific Performance: Applicable Legal Principles

Specific performance is an equitable remedy that may be awarded upon a showing of breach of contract. *Ifiesimama v. Haile*, 522 S.W.3d 675, 685 (Tex. App.—Houston [1st Dist.] 2017, pet. denied). The equitable remedy of specific performance operates to compel a party violating a duty under a valid contract to comply with its obligations. *Scott Pelley P.C. v. Wynne*, No. 05-15-01560-CV, 2017 WL 3699823, at *13 (Tex. App.—Dallas Aug. 28, 2017, pet. denied) (mem. op.).

"An essential element in obtaining the equitable remedy of specific performance is that the party seeking such relief must plead and prove he was ready, willing, and able to timely perform his obligations under the contract." *DiGiuseppe v. Lawler*, 269 S.W.3d 588, 593 (Tex. 2008). "This means even though a defendant refuses to perform its contractual obligations, a plaintiff must show it could have performed its contractual obligations." *See Scott Pelley P.C.*, 2017 WL 3699823, at *13; *see Corzelius v. Oliver*, 220 S.W.2d 632, 635 (Tex. 1949) (holding that, notwithstanding defendant's refusal to perform her obligations under contract, plaintiff was required to show that he could have performed his contractual obligations to obtain specific performance); *Hendershot v. Amarillo Nat'l Bank*, 476 S.W.2d 919, 920 (Tex. Civ. App.—Amarillo 1972, no writ) ("One of the essential equitable elements in obtaining a decree of specific performance is that the party seeking the decree must plead and prove that he is ready, willing and able to perform,

9

even though a tender of the purchase price may be excused."). "The plaintiff's burden of proving readiness, willingness and ability is a continuing one that extends to all times relevant to the contract and thereafter." *DiGiuseppe*, 269 S.W.3d at 594 (quoting 25 Richard A. Lord, WILLISTON ON CONTRACTS § 67:15, at 236–37 (4th ed. 2002)).

**C.      Analysis**

HPM challenges the trial court's finding that HPM "was not ready, willing, and able to perform at relevant times." When, as in this case, a party alleges it is ready, willing, and able to perform under the terms of a contract, but is relying on third-party financing, the party must show it had a firm commitment for financing, or it will not be entitled to specific performance. *Luccia v. Ross*, 274 S.W.3d 140, 146–47 (Tex. App.—Houston [1st Dist.] 2008, pet. denied); *see Elijah Ragira/VIP Lodging Grp., Inc. v. VIP Lodging Grp., Inc.*, 301 S.W.3d 747, 755 (Tex. App.—El Paso 2009, pet. denied); *Hendershot*, 476 S.W.2d at 921 ("When a purchaser is depending on a purchase price loan from a party who is no way bound to furnish the funds, the purchaser is not able to perform so as to be entitled to specific performance.").

Carter testified that, at the time of trial in August 2022, HPM had financing to purchase Scales's home from Relative Lending. However, HPM also needed to show that it had a firm commitment for financing at all times relevant to the contract. *See*

*Luccia*, 274 S.W.3d at 146–47; *Elijah Ragira/VIP Lodging Grp.*, 301 S.W.3d at 755; *Hendershot*, 476 S.W.2d at 921. Before a defendant will be ordered to perform, "a plaintiff must demonstrate [its] readiness, willingness, and ability to perform on the date set by the contract." *Scott Pelley P.C.*, 2017 WL 3699823, at *13.

Even if we assume (without deciding) that the parties had a contract for the sale of Scales's home and that HPM was not required to tender the purchase price at closing because Scales repudiated the Contract, HPM was still required to prove at trial that it was ready, willing, and able to perform on the dates set by the Contract. *See DiGiuseppe*, 269 S.W.3d at 594; *Scott Pelley P.C.*, 2017 WL 3699823, at *13. Here, the Contract, signed on March 27, 2021, required closing to occur by May 30, 2021. Thus, HPM was required to prove that it was ready, willing, and able to perform by showing that it had a firm financing commitment during the time period set for closing. *See Elijah Ragira/VIP Lodging Grp.*, 301 S.W.3d at 755; *Hendershot*, 476 S.W.2d at 921.

Carter testified that HPM had "funding in place" during the designated closing period. He identified the source of the funding as "a referral from Khanh Vo" and stated that the name of the referral was "Joannie Dong." But testimony from an interested witness, such as Carter, is conclusive "only if the testimony could be readily contradicted if untrue, and is clear, direct, and positive, and there are no

11

circumstances tending to discredit or impeach it." *Lofton v. Tex. Brine Corp.*, 777 S.W.2d 384, 386 (Tex. 1989); *see City of Keller*, 168 S.W.3d at 820.

Carter's testimony may have been "clear, direct, and positive," but it was not free of circumstances tending to discredit it. HPM disclosed in its response to Scales's discovery requests that it had no documentation to show that it had obtained financing from the referral. Vo testified that "Joannie Dang" was providing the funding, but she acknowledged that she did not have "any documentation proving that Mr. Carter had funding to purchase Ms. Scales's property." Vo testified that she only had "a verbal confirmation, nothing in writing." Vo did not state whether the verbal confirmation was from Carter, Dang, or someone else.

In its brief, HPM claims that "the evidence . . . show[ed] that HPM had and still has the money ready for closing." HPM asserts that "the undisputed evidence show[ed] that Mr. Carter showed up on behalf of HPM at the closing with funding secured in spite of Ms. Scales and her attorney having notified him before that she was not going through with the sale."

We agree with HPM that the parties did not dispute that Carter appeared at the closing, which he had unilaterally set. Nor did they dispute that Scales notified Carter that she was not selling her home. However, we disagree that the parties did not dispute that HPM had a firm financing commitment when he appeared at closing.

12

In her closing argument, Scales asserted that HPM had not proven a "credible source of lending." Through her cross-examination of Vo and her introduction of HPM's discovery responses, Scales showed that HPM possessed no documentation establishing that it had a firm financing commitment from the referral and that Vo had not received written confirmation that financing was in place.

Given the evidence, we conclude that HPM did not conclusively establish all vital facts to prove that it was ready, willing, and able to perform the Contract at all relevant times; namely, HPM failed to conclusively establish that it had a firm commitment for financing during the period set for closing. *See City of Keller*, 168 S.W.3d at 816 (stating evidence conclusive only if reasonable people could not differ in their conclusions); *see also Elijah Ragira/VIP Lodging Grp.*, 301 S.W.3d at 755 (affirming directed verdict on plaintiff's claim for specific performance of real estate contracts because plaintiff offered no evidence, "apart from [his] self-serving testimony," that he had firm financing commitments to support that he was ready, willing, and able to close on contracts). We also conclude that the trial court's finding that HPM was not ready, willing, and able to perform at all relevant times was not so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *See Francis*, 46 S.W.3d at 242; *see Hendershot*, 476 S.W.2d at 920–21 (holding that there was "sufficient evidence of probative force to support the trial court's finding that appellant was not ready, willing and able to

perform" real estate contract where only evidence that appellant had financing from lender G.B. Van Zandt was Van Zandt's testimony that he met with his own bank and could "make arrangements" to loan appellant funds, but there was no evidence that "appellant had any contact with Van Zandt's bank or that the bank was obligated in any way to make the loan"). We hold that the evidence was legally and factually sufficient to support the trial court's judgment denying HPM's claim for specific performance.[4]

## Conclusion

We affirm the judgment of the trial court.

Richard Hightower
Justice

Panel consists of Chief Justice Adams and Justices Hightower and Countiss.

---

[4] As mentioned, because the trial court's finding that HPM was not ready, willing, and able to perform the Contract supports the trial court's judgment denying specific performance, we need not address HPM's challenges to other findings supporting the judgment. *See* TEX. R. APP. P. 47.1.

14