Mark E. BURROUGHS, Kenneth R. Burroughs, Insurance General Management Corporation and Indemnity Casualty and Property, Ltd., Appellants,

v.

APS INTERNATIONAL, LTD., U.S. Legal Support and Christopher Kaminski, Appellees.

No. 14–01–00200–CV.

Court of Appeals of Texas, Houston (14th Dist.).

May 30, 2002.

Rehearing Overruled Aug. 1, 2002.

William H. Seele, Houston, for appellants.

Andrew T. McKinney, IV, Marc A. Young, Robert A. Plessala, Houston, for appellees.

Panel consists of Justices ANDERSON, HUDSON, and FROST.

## OPINION

JOHN S. ANDERSON, Justice.

Appellants, Mark E. Burroughs ("Mark"), Kenneth R. Burroughs ("Kenneth"), Insurance General Management Corporation ("IGM"), and Indemnity Casualty and Property, Ltd. ("ICP"), appeal from the trial court's order granting summary judgment in favor of Appellees, APS International, Ltd. ("APS"), U.S. Legal Support ("U.S. Legal"), and Christopher Kaminski ("Kaminski"). On appeal, appellants raise five points of error. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

ICP insured a company called UFO Chuting of Hawaii that was in the business of selling parasail boat rides. Jennifer Drennan, a UFO customer, was allegedly injured while parasailing. As a result, Drennan instituted a lawsuit against UFO. UFO gave notice of the Drennan suit to ICP through IGM and submitted a claim under its policy. ICP denied UFO's claim. UFO eventually settled the Drennan suit and filed its own lawsuit in an Hawaiian court against appellants in this case. UFO retained APS to serve process on appellants, and APS subcontracted with U.S. Legal to effectuate service.

On November 13, 1997, after the time period for filing an answer had passed, UFO moved for a default judgment. Appellants contacted the Hawaiian court on November 24, 1997, and filed an answer shortly thereafter. In May, 1998, UFO again moved for a default judgment. Appellants made a special appearance at the hearing on the motion, but filed nothing in opposition to UFO's motion. At appellants' request, the Hawaiian court granted a thirty-day continuance. Appellants never filed a response, and the trial court granted UFO's motion for default judgment on August 14, 1998. Appellants did not seek post-judgment relief in the Hawaiian court.

Appellants filed the underlying lawsuit against appellees asserting appellees committed fraud, violated the Texas Deceptive Trade Practices Act ("DTPA"), and were negligent. Specifically, appellants assert they were never served with notice of that lawsuit and appellees filed false affidavits in the Hawaiian court alleging service had been completed. U.S. Legal and Kaminski filed a motion to dismiss for lack of jurisdiction, and, in the alternative, a motion for summary judgment on the grounds that appellants have no standing because there is no controversy between the parties as U.S. Legal and Kaminski do not owe appellants a legal duty. They also asserted that there is no evidence they made any representations to appellants that appellants relied upon, and there is no evidence that appellants were consumers under the DTPA. APS also filed a motion to dismiss and a motion for partial summary judgment urging the same grounds, and added that there was no evidence appellants are entitled to an award of punitive damages even if they prevail on the underlying claims. The trial court granted both motions, and this appeal ensued.

## II. POINTS OF ERROR ON APPEAL

Appellants challenge each ground raised by appellees in their summary judgment motions, which were the following: (1) ap-

pellants do not have standing to assert a claim against appellees; (2) appellees do not owe a duty to appellants; (3) there is no evidence regarding an essential element of appellants' fraud claim; (4) there is no evidence appellants are consumers under the DTPA; and (5) appellants are not entitled to recover punitive damages from APS.

## III. STANDARDS OF REVIEW

### A. Traditional Motion for Summary Judgment

■ The function of a summary judgment is not to deprive a litigant of the right to a full hearing on the merits of any real issue of fact, but rather to eliminate patently unmeritorious claims and untenable defenses. *Gulbenkian v. Penn,* 151 Tex. 412, 416, 252 S.W.2d 929, 931 (1952). Appellate courts review summary judgments under the well established standards set forth in *Nixon v. Mr. Property Management Company,* 690 S.W.2d 546, 548–49 (Tex.1985). The movant for summary judgment has the burden of showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Id.* In deciding whether there is a material disputed fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true. *Id.* Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor. *Id.*

■ A defendant, as movant, is entitled to summary judgment if it (1) disproves at least one element of each of the plaintiff's theories of recovery, or (2) pleads and conclusively establishes each essential element of an affirmative defense thereby rebutting the plaintiff's cause of action. *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 679 (Tex.1979).

### B. No–Evidence Motion for Summary Judgment

■ The standard of review for a no-evidence motion for summary judgment is well settled. Rule 166a(I) provides:

After adequate time for discovery, a party without presenting summary judgment evidence may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. The motion must state the elements as to which there is no evidence. The court must grant the motion unless the respondent produces summary judgment evidence raising a genuine issue of material fact.

TEX.R. CIV. P. 166a(I). When a motion is presented under Rule 166a(I) asserting there is no evidence of one or more essential elements of the non-movant's claims upon which the non-movant would have the burden of proof at trial, the movant does not bear the burden of establishing each element of its own claim or defense. *General Mills Restaurants v. Texas Wings, Inc.,* 12 S.W.3d 827, 832 (Tex.App.-Dallas 2000, no pet.); *Lampasas v. Spring Ctr., Inc.,* 988 S.W.2d 428, 432–33 (Tex.App.-Houston [14th Dist.] 1999, no pet.). Rather, the burden shifts to the non-movant to present enough evidence to be entitled to a trial, i.e., evidence that raises a genuine fact issue on the challenged elements. TEX.R. CIV. P. 166a cmt. If the non-movant is unable to provide enough evidence, the trial judge must grant the motion. *General Mills,* 12 S.W.3d at 832; *Lampasas,* 988 S.W.2d at 433.

■ Because a no-evidence summary judgment is essentially a pretrial directed verdict, we apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict. *General Mills,* 12

S.W.3d at 832–33; *Roth v. FFP Operating Partners, L.P.,* 994 S.W.2d 190, 195 (Tex. App.-Amarillo 1999, pet. denied); *Jackson v. Fiesta Mart, Inc.,* 979 S.W.2d 68, 70 (Tex.App.-Austin 1998, no pet.). Thus, our task as an appellate court is to determine whether the non-movant produced any evidence of probative force to raise a fact issue on the material questions presented. *General Mills,* 12 S.W.3d at 833; *Roth,* 994 S.W.2d at 195; *Jackson,* 979 S.W.2d at 70. We consider all the evidence in the light most favorable to the party against whom the no-evidence summary judgment was rendered, disregarding all contrary evidence and inferences. *Merrell Dow Pharmaceuticals, Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex.1997); *General Mills,* 12 S.W.3d at 833. A no-evidence summary judgment is improperly granted if the non-movant presents more than a scintilla of probative evidence to raise a genuine issue of material fact. *General Mills,* 12 S.W.3d at 833. More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Merrell Dow,* 953 S.W.2d at 711.

█ When the trial court does not specify the ground upon which it granted summary judgment, we must affirm the judgment if any of the movant's theories with respect to the claim are meritorious. *Carr v. Brasher,* 776 S.W.2d 567, 569 (Tex.1989).

## IV. STANDING AND DUTY

█ Appellants assert the trial court erred in granting appellees' motion to dismiss and motion for summary judgment on the grounds of standing and duty. Appellees moved for summary judgment with respect to standing and duty on the ground that a private process server does not owe a duty to the person he was hired to serve.[1] Appellants admit that the question of whether a private process server is subject to liability to the person or entity they are hired to serve for negligent performance of that function is a question of first impression in Texas. In support of their position that appellees, as private process servers, owe them a duty, appellants cite *Marsh v. Hawkins,* 7 Ariz.App. 226, 437 P.2d 978 (1968), and section 85.021 of the Texas Local Government Code, and argue public policy reasons for imposing a duty.

In *Marsh,* an Arizona Court of Appeals held that a private process server is subject to the same liability that is imposed by the common law upon sheriffs when performing similar functions. 437 P.2d at 980. Under Arizona common law, a sheriff or constable is subject to civil liability for filing a false affidavit reflecting service of the petition on the defendant. *Id.* at 980. Extending this duty, the *Marsh* court held that a private process server may also be held liable for negligence in making a false return as well as for willfully making a false return. *Id.* at 981. This case, however, has no precedential value for this court. *See Penrod Drilling Corp. v. Williams,* 868 S.W.2d 294, 296 (Tex.1993) (noting appellate courts in Texas are only obligated to follow precedents from higher Texas courts and the United States Supreme Court).

Moreover, there is no similar historical basis in Texas for establishing such a duty.

---

**1.** More precisely, appellees moved for summary judgment on the ground that the trial court lacked subject matter jurisdiction. Appellees asserted that standing is a component of subject matter jurisdiction and appellants lacked standing because there was no real controversy between the parties, i.e., appellees do not owe appellants a duty. Resolution of appellants' first and second points of error, therefore, hinges on whether appellees owe a duty to appellants.

In *Marsh*, the court extended a duty that was already recognized by common law. We were unable to find the history of a sheriff's common law liability for negligent service of process in Texas. This may be because Texas has had a statute addressing a sheriff's liability since 1846. *See* Acts 1846, 1st Leg. P. 265 § 8. Hence, there apparently was no need for the common law to develop in this area.

Section 85.021 of the Local Government Code requires a sheriff to execute and return all process that is directed to the sheriff, and imposes liability for all damages sustained by a person by reason of his failure to do so, or by his making a false return. Tex. Loc. Gov't Code Ann. § 85.021 (Vernon 1999). Appellants argue there is no reason for private process servers to have any greater protection than sheriffs when they are performing the same function. Appellants explain the Legislature's silence regarding private process servers by suggesting that, unlike private process servers, without this statute waiving liability sheriffs would be immune under the doctrine of sovereign immunity. However, appellants have not cited any authority supporting their contention that this was the Legislature's intent.

■ Finally, appellants argue that, as a matter of public policy, private process servers should be held to the same standard as sheriffs. Appellants are requesting this court to establish a new common law duty in Texas for private process servers, subjecting them to liability in the event of a breach of that duty. This duty would extend to any person sustaining damages resulting from a breach of the duty by a private process server. There is no authority in the jurisprudence of Texas supporting the imposition of such a duty. It is not for an intermediate appellate court to create new causes of action. *Sim-*

*mons Airlines v. Lagrotte*, 50 S.W.3d 748 (Tex.App.-Dallas 2001, pet. filed); *Emscor Mfg. v. Alliance Ins. Group*, 879 S.W.2d 894, 910 (Tex.App.-Houston [14th Dist.] 1994, writ denied); *Bernard Johnson, Inc. v. Continental Constructors, Inc.*, 630 S.W.2d 365, 375 (Tex.App.-Austin 1982, writ ref'd n.r.e.). Accordingly, we decline to hold that a private process server owes a duty to the person or entity to be served.

We find the trial court did not err in granting appellees' motion for summary judgment on this ground. We overrule appellants' first and second points of error.

## V. FRAUD

Appellants assert the trial court erred in granting summary judgment as to their fraud claims. Appellees moved for summary judgment with respect to appellants' fraud claim on the basis that there was no evidence appellees made any representations to appellants upon which they relied to their detriment. Additionally, APS asserted there was no evidence that any alleged reliance by appellants caused the entry of the default judgment against them.

■ In order to recover under a theory of fraud, a plaintiff must show: (1) the defendant made a material representation that was false; (2) the defendant knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth; (3) the defendant intended to induce the plaintiff to act upon the representation; and (4) the plaintiff actually and justifiably relied upon the representation and suffered harm as a result. *Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex.2001). Only the first and third elements are relevant for purposes of this appeal.

One who makes a fraudulent misrepresentation may be liable to a third person, to whom the misrepresentation was not directly made, if the person making the misrepresentation had intent or knowledge that it should be exhibited or repeated to a third person and intended or had reason to expect the third person would act or refrain from acting in reliance upon the misrepresentation. *Ernst & Young,* 51 S.W.3d at 578 (quoting *Am. Indem. Co. v. Ernst & Ernst,* 106 S.W.2d 763, 765 (Tex.Civ.App.-Waco 1937, writ ref'd)); *Texas Capital Securities, Inc. v. J.D. Sandefer, III,* 58 S.W.3d 760, 772 (quoting RESTATEMENT (SECOND) OF TORTS § 531 (1976)). In other words, the misrepresentation does not have to be made directly to the particular person seeking relief. *Ernst & Young,* 51 S.W.3d at 578. It is sufficient to show that the misrepresentation was intended or expected to reach the third person and was made with the intent or expectation the third person would rely on it. *Id.*

Regarding the first factor, appellants contend appellees made two material representations that were false. The first was made when appellees filed an affidavit with the Hawaiian court which stated that appellants had been personally served with process. The second was made when appellees represented to appellants that the time to file an answer began running from the date of service. Regarding the third factor, appellants argue the trial court relied on the false affidavits in entering the default judgment, and appellees initially relied on the false information regarding their time to answer.

### A. The Affidavits

Even assuming, arguendo, the affidavits are false, appellants' claim for fraud based on the affidavits fails. Appellants did not present a scintilla of evidence the affidavits were filed with the Hawaiian court with an intention or expectation they would be relied upon by appellants. Affidavits alleging service of process are filed with the court in which a case is pending in order to inform the court that the pleading has been served on the parties named therein. They are generally not provided to the parties on whom service was purportedly made, and appellants do not contend these affidavits were provided to them in this case. Therefore, appellants' argument that the alleged false affidavits constitute the misrepresentations that were made to and relied upon by appellants fails.

Furthermore, assuming appellants relied on the affidavits, their claim for fraud cannot be based on them because they did not suffer harm as a result of this reliance. Appellants allege they suffered a default judgment as a result of their reliance on the affidavits. However, the Hawaiian trial court did not rely on the affidavits in entering the default judgment against them. This is abundantly clear from the record. The trial court gave appellants additional time to file an answer and a response to the motion for default judgment, and granted a continuance. Ultimately, in granting the default judgment the Hawaiian court stated: "even if your client had not been properly served, they have not in good faith followed up on all of the requirements that have been imposed upon them since November and December of last year. They have sat on the case." In addition, APS attached to its motion for summary judgment letters to appellants from their local counsel in Hawaii. Appellants' counsel had repeatedly urged appellants that time was of the essence. Appellants' counsel ultimately terminated representation of appellants because of appellants' failure to respond to his correspondence.

### B. Time to Answer

Appellants cannot base their claim for fraud on appellees' allegedly false representation to appellants regarding the time appellants had to file an answer because even if appellants did rely on statements made by appellees, it was not to their detriment. As stated above, the Hawaiian trial court was very clear when it granted the default judgment that it was not due to appellants' filing a late answer. Rather, it was due to appellants' failure to meet the trial court's other requirements and failure to act in good faith.

Indulging every inference and resolving all doubts in appellants' favor, we find the trial court did not err in granting appellees' motion for summary judgment on this ground. We overrule appellants' third point of error.

## VI. DTPA

Appellants argue it was error for the trial court to grant summary judgment with respect to their DTPA claim. In appellees' motions for summary judgment, they asserted that appellants are not consumers within the meaning of the DTPA, vitiating their DTPA cause of action.

The DTPA prohibits "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce...." TEX. BUS. & COM.CODE ANN. § 17.46(a) (Vernon 1987). To recover under the DTPA, a plaintiff must establish that: (1) he was a consumer of the defendant's goods or services; (2) the defendant committed false, misleading, or deceptive acts in connection with the lease or sale of goods or services; and (3) such acts were a producing cause of actual damages to the plaintiff. *Brown v. Bank of Galveston, N.A.*, 963 S.W.2d 511, 513 (Tex.1998).

A "consumer" is someone who seeks to purchase or lease goods or services. TEX. BUS. & COM.CODE ANN. § 17.45(4) (Vernon Supp.2002); *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 815 (Tex.1997). To qualify as a consumer, the plaintiff must satisfy two requirements: (1) he must have sought or acquired the goods or services by purchase or lease; and (2) the goods or services must form the basis of the complaint. *Vinson & Elkins v. Moran*, 946 S.W.2d 381, 406–07 (Tex.App.-Houston [14th Dist.] 1997, writ dism'd by agr.); *Hand v. Dean Witter Reynolds, Inc.*, 889 S.W.2d 483, 496 (Tex.App.-Houston [14th Dist.] 1994, writ denied) (citing *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 539 (Tex.1981)). The plaintiff, however, need not establish contractual privity with the defendant in a DTPA claim. *Amstadt v. United States Brass Corp.*, 919 S.W.2d 644, 649 (Tex. 1996).

A party's consumer status does not turn on whether there is a contractual relationship with the defendant, but rather, it is determined by the party's relationship to the transaction. *Perry Equip. Corp.*, 945 S.W.2d at 815. Consequently, a person does not have to be a direct purchaser in order to qualify as a consumer under the DTPA. *Lukasik v. San Antonio Blue Haven Pools*, 21 S.W.3d 394, 401 (Tex.App.-San Antonio 2000, no pet.) (citations omitted). In limited circumstances, a third party may qualify as a consumer if the transaction was specifically intended to benefit the third party and the good or service was rendered to benefit the third party. *Id.* Whether a plaintiff is a consumer is a question of law. *Wright v. Gundersen*, 956 S.W.2d 43, 47 (Tex. App.-Houston [14th Dist.] 1996, no writ).

Appellants' only argument in support of this point of error is that "they were related to the transaction of service of process" and their relationship to the transaction "provides a sufficient legal basis" to qualify appellants as consumers. Although, the

authority cited by appellants does support their contention that third parties can qualify as consumers under the DTPA if the good or service was purchased or acquired primarily for the third person's benefit, appellants fail to explain how the services purchased in this case were acquired primarily for their benefit qualifying them as consumers under the DTPA. Furthermore, the cases cited by appellants in which third persons have been held to be consumers are distinguishable from this case.

For example, in *Perry Equipment Corp.*, Perry was investigating the purchase of Maloney Pipeline Services. 945 S.W.2d at 814. As a condition of sale, Perry required that Maloney provide audited financial statements. *Id.* at 815. Arthur Andersen was hired for this purpose, and the firm was aware of the reason it was hired by Maloney. *Id.* Perry relied on the accounting done by Arthur Andersen in its decision to purchase Maloney. *Id.* Perry was held to be a consumer because Arthur Andersen knew Perry required the audit, and knew Perry was going to rely on it. *Id.*

This case is more akin to "incidental beneficiaries" cases. For example, in *Vinson & Elkins v. Moran*, this court held that beneficiaries of an estate are not consumers under the DTPA because a law firm's services are not obtained primarily for the beneficiaries' benefit. 946 S.W.2d at 408. A testator's purpose in hiring a firm is to assist in the orderly administration of the estate, which, in turn, will benefit beneficiaries. *Id.* Any benefit received

by the beneficiaries, however, is merely incidental to the main purpose. *Id.*

■■■■■ Here, UFO hired appellees to effectuate service so UFO could fulfil its obligation to serve process on the opposing side, appellants. If UFO had not used due diligence in serving appellants, UFO's claim eventually would have been barred by the statute of limitations.[2] UFO's primary purpose in hiring appellees, therefore, was so UFO could proceed with its claim against appellants. Appellants were incidental beneficiaries to this transaction, and not primary beneficiaries. Therefore, appellants do not qualify as consumers under the DTPA.

Indulging every inference and resolving all doubts in appellants' favor, we find the trial court did not err in granting appellees' motion for summary judgment on this ground. We overrule appellants' fourth point of error.

## VII.  PUNITIVE DAMAGES

Appellants assert the trial court erred in granting APS' motion for summary judgment regarding the issue of punitive damages. In its motion, APS asserted there was no evidence appellants were entitled to punitive damages even if they could prevail on their causes of action. Having found there is no evidence to support appellants' underlying causes of action, we find the trial court did not err in granting appellees' motion for summary judgment on this ground. Accordingly, we overrule appellants' fifth point of error.

2.  The statute of limitations is not tolled by the mere filing of a lawsuit. *Li v. Univ. of Texas Health Sci. Ctr. at Houston*, 984 S.W.2d 647 (Tex.App.-Houston [14th Dist.] 1998, writ denied). In order to toll the statute of limitations from the date a lawsuit is filed to the date of service, due diligence must be used in procuring service. *Id.* Therefore, appellants

not only had a duty to file suit within the time prescribed by law, but also to exercise due diligence in seeing that process was served on the necessary parties. *Klein v. Dimock*, 705 S.W.2d 405, 407 (Tex.App.-Fort Worth 1986, writ. ref'd n.r.e.). If necessary parties are not joined within the statute of limitations, the cause of action will be barred. *Id.*

## VIII.  CONCLUSION

Because we have overruled all of appellants' points of error, we affirm the order of the trial court granting appellees' motions for summary judgment.