**Affirmed in Part and Reversed and Remanded in Part and Majority and Dissenting Opinions filed February 12, 2013.**



In The

# 𝕱𝖔𝖚𝖗𝖙𝖊𝖊𝖓𝖙𝖍 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕬𝖕𝖕𝖊𝖆𝖑𝖘

————————————

## NO. 14-11-00560-CV

————————————

**PATRICK O'BRIEN MURPHY AKA O'BRIEN MURPHY AND BEVERLY MURPHY, Appellants**

**V.**

**WELLS FARGO BANK, N.A. AND HSBC BANK USA, Appellees**

**On Appeal from the 55th District Court
Harris County, Texas
Trial Court Cause No. 2008-67808**

## MAJORITY OPINION

Appellants, Patrick O'Brien Murphy a/k/a O'Brien Murphy and Beverly Murphy, appeal from the trial court's Final Judgment and Order Granting Defendants' Motion for Summary Judgment. We affirm in part and reverse and remand in part.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2005 appellants wanted to refinance their existing home mortgage and began seeking out potential lenders. This process was complicated by the fact that appellants had a personal bankruptcy on their credit history. Appellants eventually chose appellee, Wells Fargo Bank, N.A. ("Wells Fargo"), as their lender. Appellants allege that during the loan negotiations, Wells Fargo promised that if appellants made all of their payments on time for the first two years and improved their credit, Wells Fargo would consider refinancing the loan at a lower, fixed interest rate, and would either waive or substantially reduce the closing costs. Appellants have not disputed the conditional nature of Wells Fargo's alleged promise.

On January 5, 2006, appellants and Wells Fargo executed an agreement for the refinancing of appellants' existing mortgage (the "Loan Agreement"). In accordance with the Loan Agreement, Wells Fargo loaned appellants $252,000.00. Under the terms of the Loan Agreement, appellants' payments were due on or before the first day of each month, and a failure to pay by the due date was considered a default. In addition, under the Loan Agreement, appellants had the option to either place money in an escrow account which Wells Fargo would then use to pay real estate taxes, assessments, and hazard insurance on appellants' behalf, or they could elect to pay those costs directly. Appellants opted for the second choice and thereby waived the creation of an escrow account and were thus required to pay the taxes and insurance directly. The Loan Agreement also expressly provided that any prior agreements between appellants and Wells Fargo were superseded by the Loan Agreement. Finally, appellants and Wells Fargo agreed that the "Loan Agreements

2

may not be varied by any oral agreements or discussions that occur before, contemporaneously with, or subsequent to the execution of the Loan Agreements."

Less than a year after executing the Loan Agreement, appellants defaulted. Appellant Patrick Murphy admitted during his deposition that appellants purposefully withheld their monthly payments as part of their effort to "get Wells Fargo's attention" and to "force negotiations" on the refinancing of appellants' loan. The summary judgment evidence established that appellants failed to perform two obligations under the Loan Agreement: (1) to make payments by the first day of each month;[1] and (2) to directly pay their property taxes for the years 2007, 2008, and 2009. As a result of appellants' failure to directly pay the property taxes assessed on appellants' property, Wells Fargo was forced to pay the taxes in order to protect their interest in appellants' property. After appellants failed to pay the real estate taxes on the property, Wells Fargo established an escrow account to pay the delinquent property taxes as well as to fund the payment of future tax assessments.

Wells Fargo sent appellants a notice of default on April 6, 2008. In that notice, Wells Fargo informed appellants that their loan was in default and the amount of the delinquency was $14,371.33. The notice went on to inform appellants that "[y]our failure to pay this delinquency, plus additional payments and fees that may become due, will result in the acceleration of your Mortgage Note. Once acceleration has occurred, a foreclosure action, or any other remedy permitted under the terms of your Mortgage or Deed of Trust, may be initiated."

---

[1] Appellants' payments were late for the following months: November 2006, December 2006, February 2007, March 2007, April 2007, May 2007, June 2007, July 2007, August 2007, September 2007, October 2007, November 2007, December 2007, January 2008 and February 2008. Appellants have not made a monthly payment on their loan since the February 2008 payment.

3

On May 29, 2008, Wells Fargo assigned appellants' note and deed of trust to HSBC Bank USA ("HSBC") as trustee for Wells Fargo Asset Securities Corporation Home Equity Asset-Backed Certificates, series 2006-1. Wells Fargo was then retained by HSBC as the mortgage servicer on appellants' loan. Faced with appellants' failure to timely make their payments, complete cessation of payments starting in March 2008, and complete failure to pay the property taxes due on the property, Wells Fargo initiated foreclosure proceedings on July 14, 2008.

On November 14, 2008 appellants filed suit against Wells Fargo and HSBC.[2] In their original petition appellants asserted a cause of action for breach of an alleged oral contract to refinance appellants' mortgage. Appellants sought specific performance "that Wells Fargo agree to new terms in line with its prior representations." In addition, appellants asserted an action under the Uniform Declaratory Judgments Act seeking a declaration "that Wells Fargo or its successors are not entitled to foreclose the debt." *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.001 *et seq* (West 2008). Appellants also asserted in the alternative, a cause of action for common law fraud. Appellants also sought the recovery of their attorney's fees. Eventually, in their first amended petition, appellants added a claim for violation of the Texas Deceptive Trade Practices–Consumer Protection Act ("DTPA"). *See* Tex. Bus. & Com. Code Ann. § 17.50 (West 2011). According to appellants, Wells Fargo violated the DTPA "by engaging in unconscionable conduct and by representing that the written agreements signed by [appellants] conferred rights and obligations that they did not have, to their detriment."

---

[2] Once appellants filed their lawsuit, the foreclosure action was stayed and ultimately dismissed. *See* Tex. R. Civ. P. 736.11.

4

Wells Fargo answered appellants' suit and filed a counterclaim also seeking a declaratory judgment. According to Wells Fargo, a controversy existed between the parties because appellants asserted they were no longer obligated to make payments required by the Loan Agreement because Wells Fargo allegedly represented that it would renegotiate the terms of the Loan Agreement two years after the parties entered into that agreement. Wells Fargo asserted there was no provision in the Loan Agreement that would allow appellants to stop making payments for that reason. As a result of this controversy, Wells Fargo sought a declaration that appellants (1) had an obligation to continue making payments under the Loan Agreement after January 5, 2008; (2) failed to make payments after February of 2008; and (3) appellants' failure to make the required payments constituted a default on the Loan Agreement. Wells Fargo also sought the recovery of its attorney's fees.

Eventually, Wells Fargo and HSBC jointly filed a hybrid motion for summary judgment. In that motion, appellees both asserted they were entitled to judgment as a matter of law on each of appellants' claims and Wells Fargo argued it was entitled to judgment as a matter of law on its own declaratory judgment action. The trial court agreed and it granted appellees' motion on both its traditional and no-evidence grounds; the relief granted included the award to Wells Fargo of attorney's fees and costs in the amount of $116,505.75 against appellants personally.

Appellants filed a "Motion for Rehearing on Motion for Summary Judgment, Motion to Set Aside and Reopening of Discovery, or Alternatively Motion for a New Trial." In that motion, appellants repeated their arguments previously made in their summary judgment response and attempted to raise new grounds for the denial

5

of appellees' motion. The trial court denied appellants' motion and this appeal followed.

## DISCUSSION

Appellants raise nine issues on appeal, which we consolidate into four.[3]   In their first issue appellants argue the trial court erred in entering a judgment against them for Wells Fargo's attorney's fees.   In their second issue appellants contend the trial court erred in granting Wells Fargo's motion for summary judgment on appellants' fraud and DTPA causes of action because there were genuine issues of material fact.   In their third issue appellants assert the trial court abused its discretion when it denied their motion to set aside their deemed admissions. Finally, in their fourth issue, appellants argue the trial court also abused its discretion when it denied their motion for new trial.   We turn first to appellants' issues directly arising out of the trial court's granting of Wells Fargo's motion for summary judgment.

## I.     The Standard of Review

This case involves a summary judgment motion asserting both no-evidence and traditional grounds.   In a traditional motion for summary judgment, the movant has the burden to show there is no genuine issue of material fact and it is entitled to judgment as a matter of law.   *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548

---

[3] In their nine issues on appeal appellants have not challenged the summary judgment in favor of HSBC.   Accordingly, we affirm that part of the trial court's summary judgment without further comment.   *Walker v. Presidium, Inc.*, 296 S.W.3d 687, 692 (Tex. App.—El Paso 2009, no pet.).   In addition, appellants have not challenged the trial court's granting of summary judgment in favor of Wells Fargo on their breach of contract cause of action so we need not address that cause of action in this appeal.   *Id.*

6

(Tex. 1985). If there is no genuine issue of material fact, summary judgment should issue as a matter of law. *Haase v. Glazner*, 62 S.W.3d 795, 797 (Tex. 2001).

When a plaintiff moves for summary judgment, it must prove all elements of its cause of action as a matter of law. Tex. R. Civ. P. 166a(a), (c); *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986). A defendant who conclusively negates at least one of the essential elements of a plaintiff's cause of action is entitled to a summary judgment on that claim. *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004). A defendant is entitled to summary judgment on an affirmative defense if the defendant conclusively proves all the elements of the affirmative defense. *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999). Once a defendant establishes its right to summary judgment, the burden then shifts to the plaintiff to come forward with competent controverting summary judgment evidence raising a genuine issue of material fact. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995).

In a no-evidence motion for summary judgment, the movant must specifically state the elements as to which there is no evidence. *Walker v. Thomasson Lumber Co.*, 203 S.W.3d 470, 473–74 (Tex. App.—Houston [14th Dist.] 2006, no pet.). The trial court must grant the motion unless the non-movant produces summary judgment evidence raising a genuine issue of material fact on each of the challenged elements. Tex. R. Civ. P. 166a(i). However, the non-movant is not required to marshal its proof; its response need only point out evidence that raises a fact issue on the challenged elements. *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008).

A no-evidence summary judgment is essentially a pretrial directed verdict, and we apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict. *Mathis v.*

7

*Restoration Builders, Inc.*, 231 S.W.3d 47, 50 (Tex. App.—Houston [14th Dist.] 2007, no pet.). We sustain a no-evidence summary judgment if (1) there is a complete absence of proof of a vital fact; (2) the rules of law or evidence bar the court from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; or (4) the evidence conclusively establishes the opposite of a vital fact. *Walker*, 203 S.W.3d at 474. Less than a scintilla of evidence exists when the evidence offered to prove a vital fact is so weak it does no more than create the mere surmise or suspicion of its existence and, in legal effect, is no evidence. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004). More than a scintilla of evidence exists when the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions as to the existence of the vital fact. *Id.*

We review a trial court's summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). We take all evidence favorable to the non-movant as true and indulge every reasonable inference and resolve any doubts in favor of the non-movant. *Id.* Issues not expressly presented to the trial court by written motion, answer, or other response shall not be considered on appeal as grounds for reversal. Tex. R. Civ. P. 166a(c).

## II. Attorney's Fees

In their first issue, appellants contend the trial court erred when it assessed Wells Fargo's attorney's fees against them personally. According to appellants, since the loan at issue here was a nonrecourse loan under which they were not personally liable, the trial court could not assess Wells Fargo's attorney's fees against them as part of the final judgment. We agree.

8

The loan documents underlying this lawsuit spell out the nonrecourse nature of the loan.   Section 9 of the Note provides:

I understand that Section 50(a)(6)(C), Article XVI of the Texas Constitution provides that this Note is given without personal liability against such owner of the property described above and against the spouse of each owner unless the owner or spouse obtained this Extension of Credit by actual fraud.  This means that, absent actual fraud, the Note Holder can enforce its rights under this Note solely against the property described above and not personally against any owner of such property or the spouse of such owner.

Similarly, paragraph 24 of the Security Instrument provides:

Borrower understands that Section 50(a)(6)(C), Article XVI of the Texas Constitution provides that the Note is given without personal liability against each owner of the property and against the spouse of each owner unless the owner or spouse obtained this Extension of Credit by actual fraud.  That means that, absent such actual fraud, Lender can enforce its rights under this Security Instrument solely against the property and not personally against the owner of the Property or the spouse of an owner.[4]

In addition, paragraph 9 of the Security Instrument provides:

If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect the Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, ….   Lender's actions can include, but are not limited to … (b) appearing in court; and (c) paying reasonable attorney's fees to protect its interest in the Property and/or rights under

---

[4] Wells Fargo has not made any fraud allegations against appellants in this lawsuit.

9

this Security Instrument, including its secured position in a bankruptcy proceeding…. No powers are granted by Borrower to Lender or Trustee that would violate provisions of the Texas Constitution applicable to Extensions of Credit as defined by Section 50(a)(6)(C), Article XVI of the Texas Constitution or other Applicable Law.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

A nonrecourse note has the effect of making a note payable out of a particular fund or source, namely, the proceeds of the sale of the collateral securing the note. *Fein v. R.P.H., Inc.*, 68 S.W.3d 260, 266 (Tex. App.—Houston [14th Dist.] 2002, pet. denied). "[U]nder a nonrecourse note, the maker does not personally guarantee repayment of the note and will, thus, have no personal liability." *Id.* If a maker of a nonrecourse note elects to not repay the note, he is not exposed to personal liability, but instead, takes the risk that the collateral securing the note will be lost if the holder decides to enforce its security interest in the collateral. *Id.*

In the present case, Wells Fargo had initiated foreclosure proceedings against appellants' homestead, and appellants filed suit seeking, in part, to enjoin the foreclosure. While pleaded as a request for a declaratory judgment that Wells Fargo was not entitled to foreclose on the lien, this was a prayer for injunctive relief due to Wells Fargo's alleged breach of contract and fraud. In its motion for summary judgment, Wells Fargo specifically acknowledges that:

Plaintiffs brought this suit for the sole reason of halting a pending foreclosure action brought by Wells Fargo …. Wells Fargo filed its foreclosure action on July 14, 2008 …. In order to prevent Wells Fargo from foreclosing on the property, Plaintiffs filed suit against the

10

Defendants alleging breach of contract and fraud on December 10, 2008.

Wells Fargo filed a counterclaim seeking a declaratory judgment that (a) appellants had a duty to fulfill their obligations under the loan; (b) appellants failed to fulfill these obligations; and (c) appellants' failure to do so constituted a default on the loan. While pleaded as a request for a declaratory judgment, this was a breach of contract claim.

Appellants' and Wells Fargo's requests for declaratory relief cannot change the basic character of the litigation.[5] *See State v. Moreno*, 869 S.W.2d 941, 947 (Tex. 1994) ("A litigant's request for declaratory relief cannot confer jurisdiction on the court, nor can it change the basic character of a suit."); *Ragira v. VIP Lodging Grp.*, 301 S.W.3d 747, 757–58 (Tex. App.—El Paso 2009, pet. denied) ("because the declaratory action cannot supplant the action to quiet title, VIP was unable to recover attorneys' fees."); *Doss v. Homecoming Fin. Network, Inc.*, 210 S.W.3d 706, 712 (Tex. App.—Corpus Christi 2006, pet. denied) ("A litigant's request for declaratory relief cannot confer jurisdiction on the court, nor can it change the basic character of a suit."). A party may not couple a declaratory plea with a damage action just to recover attorney's fees. *Cytogenix, Inc. v. Waldroff*, 213 S.W.3d 479, 490 (Tex. App.—Houston [1st Dist.] 2006, pet. denied). Thus, a trial court abuses

---

[5] Moreover, litigation of this character was specifically addressed by the agreements. Paragraph 9 of the Security Instrument contemplates the borrower failing to perform under the security agreement (9a) and the lender doing (appearing in court) and paying (i.e. attorney's fees) what is reasonable to protect its interests – such as oppose appellants. The last paragraph of that provision states that the Lender recovers those sums as "additional debt of Borrower secured by this Security Instrument" which "bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment." Therefore, although the parties contemplated legal proceedings necessary for Lender to protect its rights and contemplated the methodology for reimbursement of any costs incurred, **including fees**, our dissenting colleague would redraft these agreements to penalize the borrowers for instituting a proceeding to challenge the Lender's rights with a forfeiture of their non-recourse protection.

11

its discretion in awarding attorney's fees under the Declaratory Judgment Act if the claim for declaratory relief is brought solely for the purpose of obtaining attorney's fees. *Id.*; *see also Kenneth Leventhal & Co. v. Reeves*, 978 S.W.2d 253, 258–59 (Tex. App.—Houston [14th Dist.] 1998, no pet.).

We note that Wells Fargo, in its motion for summary judgment, asserted as its sole ground for entitlement to attorney's fees, that it was "entitled to recover $116,505.75 in reasonable and necessary attorney's fees and court costs pursuant to section 37.009 of the Texas Civil Practice & Remedies Code **because Wells Fargo seeks declaratory relief**." (Emphasis added). Further, in its brief on appeal, Wells Fargo states that "the attorney's fees Wells Fargo sought and were awarded relate solely to its properly filed declaratory judgment action." Wells Fargo clearly relied on its own attempted declaratory judgment action, not its defense of the appellants' attempted declaratory judgment action, to support its claim for attorney's fees. However, under the case law cited above, neither party's prayer for declaratory relief supports the award of attorney's fees in this case.

The nonrecourse status of the loan, established by the Texas Constitution and the plain meaning of the loan documents, mandates that appellants are not personally liable for the attorney's fees Wells Fargo incurred prosecuting this litigation; rather, Wells Fargo may only recover its attorney's fees and costs against the property. *See In re Mullin*, 433 B.R. 1, 17 (Bankr. S.D. Tex. 2010) ("The plain meaning of the First Lien Note indicates that Wells Fargo may only recover its attorneys' fees and costs against the Property. Therefore, the Morgans are not personally liable to Wells Fargo for default under the First Lien Note because this note is considered a non-recourse equity instrument under the Texas Constitution."). We sustain appellants' first issue.

12

**III.    Summary Judgment on Appellants' DTPA and Fraud Claims**

In their second issue appellants assert the trial court erred when it granted Wells Fargo's motion for summary judgment on their DTPA and fraud causes of action.   We disagree.

**A.    DTPA**

Wells Fargo moved for summary judgment asserting it was entitled to judgment as a matter of law on appellants' DTPA cause of action because appellants were not consumers under the DTPA because they did not seek or acquire goods or services from Wells Fargo.

To recover under the DTPA, a claimant must establish that: (1) he was a consumer of the defendant's goods and services; (2) the defendant committed false, misleading, or deceptive acts in connection with the lease or sale of goods or services; and (3) such acts were a producing cause of actual damages to the consumer.   *Burroughs v. APS Int'l, Ltd.*, 93 S.W.3d 155, 163 (Tex. App.—Houston [14th Dist.] 2002, pet. denied).   Appellants' DTPA claim founders on the first element: consumer status.

Whether a plaintiff is a consumer under the DTPA is a question of law for the court to decide.   *Rivera v. South Green Ltd. P'ship*, 208 S.W.3d 12, 21 (Tex. App.—Houston [14th Dist.] 2006, pet. denied).   A consumer is an individual who seeks or acquires goods or services by purchase or lease.   *Id.* (citing *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 649 (Tex. 1996)).   In *Riverside National Bank v. Lewis*, the Texas Supreme Court held that money is not a good or service under the DTPA and that one who seeks only money in a transaction is not a consumer under the DTPA.   603 S.W.2d 169, 173–75 (Tex. 1980).   The court also held that Lewis was not a consumer because he sought only money to refinance his automobile loan

13

to avoid repossession. *Id.* at 173–74. Because appellants were seeking a loan to refinance their home mortgage and not the purchase of a new home, we conclude that, like Lewis, they are not consumers under the DTPA. *Id.*; *Cent. Tex. Hardware, Inc. v. First City, Tex.–Bryan, N.A.*, 810 S.W.2d 234, 236–37 (Tex. App.—Houston [14th Dist.] 1991, writ denied). We hold the trial court did not err when it granted Wells Fargo's motion for summary judgment on appellants' DTPA cause of action.

### B. Fraud

In addition to their DTPA claim, appellants also asserted a common-law fraud cause of action against Wells Fargo based on appellants' allegation that Wells Fargo promised that if appellants made all of their payments on time for the first two years and improved their credit, Wells Fargo would consider refinancing the loan at a lower, fixed interest rate, and would either waive or substantially reduce the closing costs. Appellants contend the trial court erred in granting Wells Fargo's motion for summary judgment on their fraud claim.

In its summary judgment motion, Wells Fargo asserted it was entitled to summary judgment on appellants' fraud cause of action because the alleged misrepresentation was a conditional promise and was therefore too indefinite and uncertain to be actionable fraud.

A fraud cause of action requires a party to establish that (1) a material misrepresentation was made; (2) the representation was false; (3) when the speaker made the representation he knew it was false or made it recklessly without knowledge of the truth and as a positive assertion; (4) the speaker made it with the intention that it should be acted upon by the party; (5) the party acted in reliance upon it; and (6) the party thereby suffered injury. *Lundy v. Masson*, 260 S.W.3d

14

482, 492 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). A promise to act in the future constitutes fraud only when made with the intention, design, and purpose of deceiving, that is, a promise made with no intention of performing the act. *Ikon Office Solutions, Inc. v. Eifert*, 125 S.W.3d 113, 124 (Tex. App.—Houston [14th Dist.] 2003, pet. denied).

Here, it is undisputed that the alleged misrepresentation underlying appellants' fraud cause of action was a conditional promise: if appellants made all of their payments on time for the first two years and improved their credit, Wells Fargo would consider refinancing the loan at a lower, fixed interest rate, and would either waive or substantially reduce the closing costs on that refinance. A conditional promise such as the one here is too indefinite and uncertain to support a fraud cause of action. *See Ford v. City State Bank of Palacios*, 44 S.W.3d 121, 139–41 (Tex. App.—Corpus Christi 2001, no pet.) (holding that a conditional promise to extend credit only if the borrower obtained approval from a third party cannot support a fraud claim if that condition is never met). We hold the trial court did not err when it granted Wells Fargo's motion for summary judgment on appellants' fraud cause of action.

## IV. Appellants' Deemed Admissions

In their third issue on appeal appellants contend the trial court abused its discretion when it denied their request, initially made in their response to appellees' motion for summary judgment, to withdraw their deemed admissions. Assuming without deciding the trial court abused its discretion when it refused to withdraw the deemed admissions, because we have affirmed the trial court's granting of appellees' motion for summary judgment without considering the deemed admissions, we hold the error was harmless. We overrule appellants' third issue.

15

## V. Denial of Appellants' Motion for New Trial

### A. Standard of Review

We review a trial court's denial of a motion for new trial for an abuse of discretion. *Dir., State Empls. Workers' Comp. Div. v. Evans*, 889 S.W.2d 266, 268 (Tex. 1994); *Stevens v. Anatolian Shepherd Dog Club of Am., Inc.*, 231 S.W.3d 71, 77 (Tex. App.—Houston [14th Dist.] 2007, pet. denied). A trial court abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law, or if it clearly fails to correctly analyze or apply the law. *Stevens*, 231 S.W.3d at 77. The fact that a trial court may decide a matter within its discretionary authority differently than an appellate court does not demonstrate an abuse of discretion. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985).

### B. Analysis

Appellants contend the trial court abused its discretion when it denied their motion for new trial because they argue they needed additional time to conduct discovery, specifically the deposition of a Wells Fargo corporate representative. Wells Fargo responds that appellants have waived this issue. We agree.

> When a party argues it has not had an adequate opportunity for discovery before a summary-judgment hearing, that party must file an affidavit explaining the need for further discovery or a verified motion for continuance.

*Doe v. Roman Catholic Archdiocese of Galveston-Houston*, 362 S.W.3d 803, 809 (Tex. App.—Houston [14th Dist.] 2012, no pet.). The affidavit must explain why the continuance is necessary by detailing the evidence sought, explaining its materiality, and showing the due diligence that was used to obtain that evidence.

16

*Carter v. MacFadyen*, 93 S.W.3d 307, 310 (Tex. App.—Houston [14th Dist.] 2002, pet. denied).   Appellants did not do this; therefore they have waived this particular complaint on appeal.   *Rogers v. Cont'l Airlines, Inc.*, 41 S.W.3d 196, 200–01 (Tex. App.—Houston [14th Dist.], no pet.).

Appellants also argue at length that the trial court should have granted their motion for new trial because they "submitted additional references to other court's decisions and various publications elaborating on the possibility of forged or manufactured documents by what is known as 'robo-signing.'"   However, none of these "additional references" were presented to the trial court in their summary judgment response.   Because they were not, we cannot conclude that the trial court abused its discretion when it denied their motion for new trial.   *See Dubose v. Worker's Med., P.A.*, 117 S.W.3d 916, 920 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (holding, in a summary judgment case, that any issues not expressly presented to the trial court in a written response shall not be considered as grounds for reversal).   We overrule appellants' fourth issue on appeal.

## CONCLUSION

We affirm the trial court's summary judgment in favor of appellees on appellants' causes of action against them.   We affirm that part of the trial court's summary judgment granting Wells Fargo's request for a declaration that appellants are in default of the Loan Agreement.   We reverse the trial court's summary judgment to the extent it awards Wells Fargo attorney's fees against appellants personally, and remand that issue to the trial court for further proceedings consistent

with this opinion.

/s/    Margaret Garner Mirabal
Senior Justice

Panel consists of Justices Frost, McCally, and Mirabal.[6] (Frost, J., dissenting).

---

[6] Senior Justice Margaret Garner Mirabal sitting by assignment.